UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TRACI R. O/B/O E.A.O.B.,

                            Plaintiff,

v.                                          5:21-cv-00607 (DNH/TWD)

COMM'R OF SOC. SEC.,

                            Defendant.

_____

APPEARANCES:                          OF COUNSEL:

OLINSKY LAW GROUP               HOWARD D. OLINSKY, ESQ.
  *Counsel for Plaintiff*
One Park Place
300 South State Street, Suite 420
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION     TIMOTHY SEAN BOLEN, ESQ.
OFFICE OF THE GENERAL COUNSEL
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

This matter was referred to the undersigned for a report and recommendation pursuant to

28 U.S.C. § 636(b) and Local Rule 72.3.  Traci R. ("Plaintiff") brings this action on behalf of

E.A.O.B., a minor child, seeking review of the final decision of the Commissioner of Social

Security ("Commissioner," or "Defendant") denying her application for children's supplemental

security income ("SSI") under Title XVI of the Social Security Act ("Act").  (Dkt. No. 1.)  This

Court has jurisdiction.  42 U.S.C. § 405(g).  Plaintiff did not consent to the disposition of this

case by a Magistrate Judge.  (Dkt. No. 7.)  Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure Rule 12(c) in accordance with General Order 18. (Dkt. Nos. 16, 17.)  For the reasons discussed below, the Court recommends denying Plaintiff's motion and granting Defendant's motion.

## I.      BACKGROUND

E.A.O.B. ("Claimant") was born in February 2013, and is diagnosed with autism spectrum disorder and behavioral problems.  (T. at 8, 138.[1])  On December 8, 2017, on behalf of Claimant, Plaintiff applied for children's SSI, alleging disability due to autism spectrum disorder.  *Id*. at 15, 124-33  The claim was initially denied on March 28, 2018.  *Id*. at 60.  On November 15, 2019, Plaintiff and Claimant appeared at a hearing before Administrative Law Judge ("ALJ") Kenneth Theurer.  *Id*. at 25-45.  On November 22, 2019, ALJ Theurer issued an unfavorable decision finding Claimant not disabled under the Act.  *Id*. at 12-21.  Plaintiff requested Appeals Council review, which was denied on March 2, 2021, making the ALJ's determination the Commissioner's final decision.  *Id*. at 1-7.  Plaintiff now appeals to this Court arguing the ALJ's functional equivalence analysis is not supported by substantial evidence. (Dkt. No. 16.)

## II.     LEGAL STANDARDS

### A.      Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d

---

[1] The Administrative Transcript is found at Dkt. No. 13.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein. Citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the

3

[Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.      Standard to Determine Disability of a Child

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C). The ALJ follows a three-step sequential analysis to determine whether a child is entitled to SSI benefits. *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 140 (N.D.N.Y. 2012).

First, the ALJ determines whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). Second, the ALJ considers whether the child has a medically determinable impairment that is severe. *Id*. § 416.924(c). Third, the ALJ must determine whether the child's impairment or combination of impairments medically or functionally equal an impairment listed in 20 C.F.R. Pt. 404, Subpart P, App. 1 (the "Listings"). *Id*. § 416.924(d).

The limitations caused by a child's severe impairment or combination of impairments are evaluated pursuant to six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects, (5) caring for yourself; and (6) health and physical well-being. *Id*. § 416.926a(b)(1). To demonstrate functional equivalence to a disability, the child must exhibit a "marked" limitation in two domains or an "extreme" limitation in one domain. *Id*. § 416.926a(a). A child has a "marked" limitation if the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id*. § 416.926(e)(2)(i).

4

An "extreme" limitation exists when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  *Id*. § 416.926(e)(3)(i).

## III.   DISCUSSION

### A.   The ALJ's Decision

In the November 22, 2019, written decision, the ALJ applied the three-step sequential evaluation set forth in 20 C.F.R. § 416.926.  (T. at 15-21.)  Initially, the ALJ discussed Claimant was born on February 13, 2013, and, therefore, was a preschooler when the application was filed and currently was a school age child.  *Id*. at 16.

At step one, the ALJ found Claimant has not engaged in substantial gainful activity.  *Id*. At step two, he determined Claimant has the severe impairments of autism spectrum disorder and borderline intellectual functioning.  *Id*.  At step three, the ALJ found Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of the Listings, including Listing 112.10 (autism spectrum disorder).  *Id*. at 16-17.  Similarly, the ALJ determined Claimant does not have an impairment or combination of impairments that functionally equals the severity of the Listings.  *Id*. at 17-21.  In making this determination the ALJ considered Claimant's functions in the six domains and concluded Plaintiff has a less than marked limitation in acquiring and using information, attending and completing tasks, and interacting and relating with others.  *Id*.  The ALJ assessed no limitations in the remaining domains.  *Id*.  Accordingly, the ALJ determined Claimant has not been disabled, as defined in the Act, since December 8, 2017, the date the application was filed.  *Id*. at 21.

### B.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner for further proceedings, arguing the ALJ erred in concluding Claimant does not

have an extreme limitation in acquiring and using information, and at least a marked limitation in attending and completing tasks and interacting and relating with others.  (Dkt. No. 16 at 10-20.) The Commissioner contends substantial evidence supports the ALJ's determinations.  (Dkt. No. 17 at 6-15.)  For reasons discussed below, the Court agrees with the Commissioner.

"An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." *Dana F. o/b/o O.E.H. v. Berryhill*, No 6:18-CV-1337 (ATB), 2019 WL 7067060, at *3 (N.D.N.Y. Dec. 23, 2019).  Further, while "[a]n ALJ is not required to explicitly analyze every piece of conflicting evidence in the record . . . the ALJ cannot 'pick and choose' evidence in the record that supports his conclusions."  *Id*. (internal quotations and citation omitted).  In the context of child disability proceedings, "[w]hen reviewing a child's impairments for functional equivalence, adjudicators must consider all of the relevant evidence, and employ a 'whole child' approach."  *Nivia D. o/b/o P.L.D. v. Comm'r of Soc. Sec.*, No. 5:18-cv-0634 (TWD), 2019 WL 4573262, at *4 (N.D.N.Y. Sept. 20, 2019) (internal quotations and citation omitted).  This approach "requires the ALJ to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's medically determinable impairment accounts for limitations in activities, and determine what degree such impairment limits that child's ability to function age-appropriately in each domain."  *Id*.

As an initial matter, Plaintiff's argument—that the evidence supports an extreme limitation in acquiring and using information, and at least a marked limitation in attending and completing tasks and interacting and relating with others—is based largely on her disagreement with how the ALJ weighed the evidence in finding less than a marked limitation in these domains.  But it is not the function of this Court to re-weigh evidence or consider *de novo*

whether Claimant is disabled.  *See Urena v. Comm'r of Soc. Sec.*, 379 F. Supp. 3d 271, 278 (S.D.N.Y. 2019).  Rather, "[a]bsent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance."  *Russell v. Saul*, 448 F. Supp. 3d 170, 175 (D. Conn. 2020); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence.").

The undersigned has reviewed the ALJ's written determination, as well as the administrative record, and finds the Commissioner's determination is supported by substantial evidence and free of legal error.  While the record evidence supports Claimant has some limitations in functioning—particularly with regard to acquiring and using information—the ALJ adequately explained how he arrived at his determination that Claimant has less than a marked limitation in the three domains at issue and substantial evidence supports the ALJ's findings.  To that end, the ALJ discussed and considered the record evidence, including:

- Plaintiff's testimony at the hearing on November 15, 2019, (T. at 25-45);
- Claimant's disability and function reports from Plaintiff dated December 15, 2017, (Exhibit 2E, Exhibit 3E);
- Treatment records from Claimant's pediatrician, Fadi Alass, M.D., of Family Health Network of Central New York, (Exhibit 4F, Exhibit 7F, Exhibit 9F);
- hospital records from June 22, 2018, (Exhibit 8F);
- treatment records from Maranda McFadden, LMSW, dated September 9, 2019, to October 31, 2019, (Exhibit 10F);
- report and opinion from consultative examiner Jeanne Shapiro, Ph.D., dated March 1, 2018, (Exhibit 6F);
- opinion from non-examining State agency consultant H. Ferrin, Ph.D., dated March 28, 2018, (Exhibit 2A);

- Core evaluation from Ianthe I. Warner, MS CCC-SLP, Sandra E. Rivera, BS PT, and Anna Bennett, M.S. OT/L, dated June 2, 2015, (Exhibit 1F);
- Early Intervention IFSP progress report from Valerie Loucks, PT, DPT, dated November 9, 2015, (Exhibit 1F);
- Early Intervention IFSP progress report from Sally Griswold, LCSW-R, dated November 11, 2015, (Exhibit 2F);
- Committee on Preschool Special Education report from Leslie Davis Byron, Ph.D., Certified School Psychologist, (Exhibit 3F); and
- Teacher questionnaire from Melinda Young and Jaclyn McMullin, dated October 15, 2019, (Exhibit 11E).

(T at 16-21.)  The ALJ found Plaintiff's subjective impression of Claimant's limitations was not entirely consistent with the record and also evaluated the persuasiveness of the medical opinions and other opinion in accordance with the Regulations.  *Id*. at 19-20.

### 1.     The ALJ's Evaluation of Opinion Evidence

The ALJ found the medical opinions of Drs. Shapiro and Ferrin persuasive and the opinion of Claimant's teachers less persuasive.  *Id*. at 20.

### a.     Dr. Shapiro

On March 1, 2018, Claimant was five years old and presented to Dr. Shapiro for a consultative intelligence evaluation.  *Id*. at 233.  It was noted she was currently being homeschooled (not in grade school yet), was in special education due to autism, and received occupational therapy and counseling services.  *Id*.  Dr. Shapiro found Claimant had normal posture and motor behavior, appropriate eye contact, adequate speech and language, and a cooperative attitude.  (T. at 234.)  She was relaxed and comfortable throughout the examination.  *Id*.  She recalled and understood instructions and her style of responding was deliberate, orderly, and self-correcting.  *Id*.  She worked with reflection and deliberation.  *Id*.  Her attention and concentration were good, and she showed no significant emotional distress.  *Id*.  Testing revealed a full-scale IQ of 78 placing Plaintiff in the borderline range of intelligence.  *Id*. at 285.  Dr.

Shapiro noted Claimant needed help with dressing, bathing, and grooming herself. *Id*. Socially, she did not always get along with friends and family. *Id*.

Dr. Shapiro opined mild limitations in attending, understanding, and following simple instructions and direction. *Id*. She assessed mild limitations in completing age appropriate tasks. *Id*. Dr. Shapiro found no limitations in adequately maintaining appropriate social behavior; no limitations in responding appropriately to changes in the environment commensurate with her age; no limitations in learning in accordance to cognitive functioning; no limitations asking questions and requesting assistance in an age appropriate manner; no limitations being aware of danger and taking needed precautions in an age appropriate manner; no limitations interacting adequately with peers; and no limitations interacting adequately with adults. *Id*. at 235-36.

As noted, the ALJ found Dr. Shapiro's opinion persuasive. *Id*. at 20. The ALJ explained it was based on Dr. Shapiro's examination that found normal motor behavior, appropriate eye contact, adequate speech and language, a cooperative attitude, the ability to recall and understand instructions, and good attention/concentration. *Id*. The ALJ also found Dr. Shapiro's opinion consistent with March 2016 records indicating Claimant's "strong and solid" communication skills and cognitive skills, (*id*. at 211, 113); November 2019 records noting "no negative behaviors at school," (*id*. at 276); November 2015 records describing Claimant as a "happy, curious and bring young girl," (*id*. at 203); and November 2018 records describing her as "interactive" with normal eye contact and normal affect, (*id*. at 263). The ALJ further noted Dr. Shapiro's professional expertise. *Id*. at 20.

**b.    Dr. Ferrin**

On March 28, 2018, Dr. Ferrin reviewed the record, including Dr. Shapiro's report and medical source statement, and assessed the six functional domains as follows: (1) less than a

marked limitation in acquiring and using information; (2) no limitation in attending and completing tasks; (3) less than a marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) no limitation in caring for yourself; and (6) no limitation in health and physical well-being.  *Id*. at 50-51.

The ALJ also found Dr. Ferrin's opinion persuasive.  *Id*. at 20.  The ALJ explained Dr. Ferrin has program and professional expertise, reviewed the record, and cited IQ testing, as well as the findings from Dr. Shapiro's consultative examination  *Id*. at 20, 51-52.

### c.      Teacher Questionnaire

On October 15, 2019, Claimant's first grade teachers, Ms. Young and Ms. McMullin, completed a questionnaire.  *Id*. at 185.  They began interacting with Claimant on September 5, 2019, and indicated she was below grade level in reading, math, and writing, and also required special education services two hours a day.  *Id*.

As to the domain of acquiring and using information, they opined Claimant has "a very serious problem" in comprehending oral instructions; understanding school and content vocabulary; reading and comprehending written material; comprehending and doing math problems; understanding and participating in class discussions; providing organized oral explanations and adequate descriptions; expressing ideas in written form; learning new material; recalling and applying previously learned material; and applying problem-solving skills in class discussions.  *Id*. at 185-86.  They further stated Claimant "has difficulty understanding directions and daily routines.  She requires adult support in all academics and most of the time is not able to complete tasks independently."  *Id*. at 186.

Next, in the domain of attending and completing tasks, the teachers opined "a very serious problem" in the following areas daily: paying attention when spoken to directly; focusing

long enough to finish assigned activity or task; carrying out single-step instructions; carrying out multi-step instructions; completing class/homework assignments; and working at a reasonable pace/finishing on time.  *Id*. at 186.  They opined "a serious problem" in refocusing to task when necessary and working without distracting herself or others.  *Id*.  They noted "an obvious problem" in sustaining attention during play/sports activities and organizing her own things and school materials.  *Id*.  She had "no problem" waiting to take turns and changing from one activity to another without being disruptive.  *Id*.  They also stated Claimant "needs many prompts to focus on lesson being taught.  This is not due to hyperactivity, but her mind being elsewhere. She also needs reminders and support to understand what it means to work independently."  *Id*. at 187.

As to the domain of interacting and relating with others, the teachers opined "a serious problem" in seeking attention appropriately.  *Id*.  They opined "an obvious problem" in playing cooperatively with other children; making and keeping friends; expressing anger appropriately; following rules; introducing and maintaining relevant and appropriate topics of conversation; and in using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation.  *Id*.  They noted "a slight problem" in asking permission appropriately; relating experiences and telling stories; taking turns in conversation; interpreting the meaning of facial expression, body language, hints, and sarcasm.  *Id*.  She had "no problem" in using language appropriate to the situation and listener.  *Id*.  In response to the question, "Has as it been necessary to implement behavior modification strategies for the child?", they checked "no."  *Id*.

Lastly, the teachers opined "no problems" in the domain of moving about and manipulating objects; "no problems" in the domain of caring for yourself; and "n/a" with respect to health and physical well-being.  *Id*. at 188-89.

The ALJ found the opinion of Claimant's teachers less persuasive.  *Id*. at 20.  To that end, the ALJ noted the teachers had only known Claimant for about a month, the opinion was contrary to other evidence, specifically records indicating Claimant has "solid and strong" communication skills and cognitive skills, and was contrary to all other opinion evidence in the record.  *Id*.

### 2.     The ALJ's Analysis of the Functional Domains

In general, Plaintiff appears to argue the teachers' assessment, in which they opined Claimant has "obvious," "serious," or "very serious" limitations in various domain activities, necessarily equates to a finding of "marked" or "extreme" limitations.  (Dkt. No. 16 at 11-20.) However, Plaintiff's inference is misplaced and without legal authority.

"A teacher's assessment that a claimant has some limitations within a domain is not necessarily inconsistent with an ALJ's conclusion of a 'less than marked' limitation in the domain."  *Bertina K. o/b/o T.J.S. v. Comm'r of Soc. Sec.,* No. 1:20-CV-1846 (WBC), 2022 WL 3370808, at *3 (W.D.N.Y. Aug. 16, 2022) (citing *Smith v. Colvin*, No. 13-CV-6143P, 2015 WL 1119983, at *16 (W.D.N.Y. Mar. 12, 2015) (collecting cases)); *see Sally M. o/b/o C.B. v. Comm'r of Soc. Sec.*, No. 20-CV-6210, 2021 WL 1783007, at *3 (W.D.N.Y. May 5, 2021) (assessments of "serious" and "very serious" problems in a domain are not necessarily inconsistent with an ALJ's conclusion that the child's limitations were "less than marked"); *see Melissa C. o/b/o M.C. v. Kijakazi*, No. 20-CV-0885L, 2022 WL 167534, at *3 n.2 (W.D.N.Y. Jan. 18, 2022) (although the teacher questionnaires noting "serious" and "very serious" problems could be read to support a marked or extreme limitation, they do not, by themselves, compel such a finding; *see Spruill ex rel. J.T. v. Astrue*, No. 6:12-CV-6060, 2013 WL 885739, at *8 (W.D.N.Y. Mar. 8, 2013) ("Plaintiff infers that a finding of a 'serious' problem in a particular

skill area in a domain of functioning should be equated with a "marked" limitation.  However, Plaintiff has not cited, and the Court has not found, any cases or other legal authority directly supporting this proposition.").

Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Substantial evidence "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  Therefore, Plaintiff's general argument, that evidence of limitations in some areas of functioning is inconsistent with a finding of "less than marked," fails.  *See Bertina K. o/b/o T.J.S.*, 2022 WL 3370808, at *3.

### a.        Domain of Acquiring and Using Information

Plaintiff argues the ALJ's analysis in this domain is "woefully one-sided" and ignores much of the favorable evidence to Claimant, in particular, the teacher questionnaire that described "very serious" limitations in all subdomains of acquiring and using information, which would equate to an extreme limitation and finding of disability.  (Dkt. No. 16 at 12-14.)  For the reasons outlined below, the ALJ's determination of less than a marked limitation in the domain of acquiring and using information was proper and supported by substantial evidence.

This domain considers how well the child acquires or learns information and how well they use the information they have learned.  20 C.F.R. § 416.926a(g)(1).  Preschool children develop skills for reading, math, and writing; use words to ask questions, give answers, describe

things, provide explanations, and tell stories; follow several unrelated directions; understand the order of daily routines and remember accomplishments; and begin to understand increasingly complex concepts. *Id.* § 416.926a(g)(2)(iii).  School age children should essentially progress on these concepts.  *Id.* § 416.926a(g)(2)(iv).  Limited functioning examples in this domain include: (i) not understanding words about space, size, or time; (ii) inability to rhyme words or the sounds in words; (iii) difficulty recalling important things learned in school the day before; (iv) difficulty solving math questions or computing; and (v) talking in short simple sentences and having difficulty explaining what you mean.  *Id.* § 416.926a(g)(3).

The ALJ concluded Claimant has less than a marked limitation in the domain of acquiring and using information.  (T. at 18.)  In making his determination, the ALJ reasoned at the consultative examination, Claimant recalled and understood instructions.  *Id.* at 18, 234.  She also worked with reflection and deliberation and her attention and concentration were good.  *Id.*

Although Plaintiff asserts the teacher questionnaire and other record evidence the ALJ "ignored" demonstrates an extreme limitation in this domain, Plaintiff fails to prove no reasonable fact finder could have reached the ALJ's determination.  *See Brault*, 683 F.3d at 448. Further, as discussed above, assessments of "serious" and "very serious" problems in a domain are not necessarily inconsistent with an ALJ's conclusion that the child's limitations were "less than marked."  *Sally M. o/b/o C.B.*, 2021 WL 1783007, at *3.  Moreover, Plaintiff's argument overlooks that the ALJ's decision must be read as a whole.  *See Jeanette J.*, 2020 WL 4932047, at *5 (noting ALJ's "discussion viewed as a whole is not so obscure as to make the judicial review contemplated by the Social Security Act a perfunctory process.").

Here, the ALJ considered the teacher questionnaire, together with other evidence in the record, and came to a different conclusion.  *See Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)

14

(reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).[2]  When read as a whole, the ALJ plainly relied on Dr. Ferrin's prior administrative medical findings, Dr. Shapiro's consultative examination report, and other evidence reflecting the Claimant's abilities relevant to this domain, including the teacher questionnaire, which the ALJ found less persuasive.  (T. at 18-20.[3])  The Disability Determination Explanation form shows Dr. Ferrin had, among other evidence, Dr. Shapiro's report and opinion, (*id*. at 49), Dr. Byron's report, (*e.g.*, *id*. at 51 (citing the SB-5-IQ scores set out in Dr. Byron's February 23, 2016, report)), Family Health Network records, (*id*. at 49), and the Claimant's function reports, (Tr. 49-50).  As noted, Dr. Ferrin found Claimant had less than a marked limitation in acquiring and using information, specifically citing findings from Dr. Shapiro's consultative examination including that the Claimant worked with deliberation and reflection, and her attention and concentration were good.  *Id*. at 51, 234.  An ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability and "whose opinions may constitute substantial evidence in support of residual functional capacity findings."  *Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (quoting *Delgrosso v. Colvin*, No. 3:13-CV-1470 (GTS/ESH), 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015));

---

[2] As discussed above, the ALJ found the teacher questionnaire less persuasive and accurately noted Claimant's teachers had only interacted with her for about a month and it was inconsistent with Dr. Shapiro's examination, along with other records.  (T. at 20.)

[3] The Court agrees with the Commissioner that the ALJ's discussion of the record evidence separates this case from *Suarez o/b/o C.L.S. v. Comm'r of Soc. Sec.*, No. 20 Civ. 6559 (KPF), 2021 WL 5326431 (S.D.N.Y. Nov. 16, 2021), where there was no indication how the ALJ reached his findings, "what evidence he relied upon, and what evidence he rejcted[.]"  (Dkt. No. 17 at 8; Dkt. No. 16 at 12-13.)

accord *Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin*, 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin*, 667 F. App'x 319 (2d Cir. 2016).

The ALJ also discussed other evidence throughout the decision that bolsters his findings. For instance, during the consultative examination, the Claimant recalled and understood instructions. *Id*. at 20, 234. Other records show Claimant had "solid and strong cognitive skills" and she was able to name four colors, draw, and play board games. *Id*. at 19, 200, 220. All of this evidence was relevant to this domain, which broadly considers Claimant's "ability to learn information and to think about and use the information." Social Security Ruling ("SSR") 09-3p, 2009 WL 396025, at *2 (Feb. 17, 2009). Indeed, the ruling provides examples of relevant evidence, including the child's ability to learn how to play simple games, draw, and follow directions. *Id*. at *2, 5. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) ("[E]ven if the ALJ was not as explicit in his reasoning . . . , an ALJ does not have to state on the record every reason justifying a decision, nor is an ALJ required to discuss every piece of evidence submitted.").

Relatedly, the ALJ did not ignore or "cherry-pick" evidence that supported his decision. (Dkt. No. 16 at 13.) Rather, the ALJ properly carried out his responsibility to "review[] all of the medical and other evidence before him, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole." *Katherine Marie S. v. Comm'r of Soc. Sec.*, No. 18-00233, 2019 WL 1427456, at *8 (N.D.N.Y. Mar. 29, 2019). As explained above, the ALJ properly considered the evidence in accordance with the regulations and he reasonably relied on the assessments of Drs. Shapiro and Ferrin. *See Christina M. v. Saul*, No. 18-0332, 2019 WL 3321891, at *6 (N.D.N.Y. July 24, 2019) (explaining that it is "within the ALJ's purview to rely on the opinion" of a state agency physician who reviewed the evidence). Where,

as here, the ALJ discussed evidence favored by the Plaintiff in addition to evidence supporting the RFC, a suggestion of "cherry-picking" is unavailing.  (T. at 16, 19, 20, 33, 51, 185-86, 203.)  Indeed, "an ALJ does not have to state on the record every reason justifying a decision . . . [and] is not required to discuss every piece of evidence submitted.  An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."  *Brault*, 683 F.3d at 448 (citations and internal quotation marks).

To be sure, as Plaintiff highlights in her brief, there is evidence Claimant would struggle with transition and changes to routine, (Dkt. No. 16 at 14-14, T. 186, 202, 205, 206), but Dr. Shapiro also found she would have "no limitations responding appropriately to changes" and noted her "cognitive problems" "do not appear significant enough to interfere with the claimant's ability to function on a daily basis."  *Id*. at 236.  As the Commissioner points out, "[t]he ALJ was free to weigh and resolve the conflicting evidence; simply because the resolution of conflicting evidence did not favor the claimant does not amount to improper 'cherry picking.'"  (Dkt. No. 17 at 10.)  "Genuine conflicts in the medical evidence are for the Commissioner to resolve."  *Veino v. Barnhard*, 312 F.3d 578, 588 (2d Cir. 2002).

In sum, it is not for the Court to reweigh the evidence, as Plaintiff urges.  *See Cruz o/b/o M.M.W. v. Comm'r of Soc. Sec.*, No. 19-CV-9253, 2021 WL 4123969, at *13 (S.D.N.Y. Aug. 25, 2021) ("However, the reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than one interpretation."), *report-recommendation adopted sub nom. Cruz v. Comm'r of Soc. Sec.*, 2021 WL 4124225 (S.D.N.Y. Sept. 9, 2021).

The ALJ properly assessed Claimant's functioning in the domain of acquiring and using information and his determination was supported by substantial evidence. *Lewis*, 122 F. Supp. 3d at 7.

### b.       Domain of Attending and Completing Tasks

Plaintiff generally contends the ALJ's analysis in this domain cites to the consultive evaluation at the exclusion of all the other record evidence and does not provide any explanation as to why probative evidence was rejected, including the findings of Dr. Byron, Dr. Loucks, and Ms. Griswold.  (Dkt. No. 16 at 15-17.)  Essentially, Plaintiff argues the ALJ ignored significant and probative evidence, which shows at least marked, if not extreme limitations in this domain. *Id*.  For the reasons outlined below, the ALJ's determination of less than a marked limitation in the domain of attending and completing tasks was proper and supported by substantial evidence.

This domain considers how well a child can focus and maintain attention, and to begin, carry through, and finish activities or tasks.  20 C.F.R. § 416.926a(h); SSR 09-4p, 2009 WL 396033, at *2, 5 (Feb. 19, 2009).  The Commissioner considers the child's ability to initiate and maintain attention, including the child's alertness and ability to focus on an activity or task despite distractions, and to perform tasks at an appropriate pace; the child's ability to change focus after completing a task and to avoid impulsive thinking and acting; and a child's ability to organize, plan ahead, prioritize competing tasks, and manage time.  20 C.F.R. § 416.926a(h).

Preschoolers should be able to pay attention when spoken to directly; sustain attention to their play and learning activities; concentrate on activities like putting puzzles together or completing art projects; focus long enough to do many things by themselves (such as getting clothes together and dressing, feeding, or putting away toys); and wait turns and change activities when instructed.  *Id*. § 416.926a(h)(2)(iii).

School age children should focus attention in a variety of situations and follow directions; remember and organize school materials, complete homework assignments, concentrate and not make careless mistakes, and should be able to stay on task and in place; and should be able to change activities and routines. *Id*. § 416.926a(h)(2)(iv). They should be able to sustain attention well enough to complete transition tasks, read by themselves, and complete family chores. *Id*. Limited functioning in this domain includes being easily startled, distracted, or overreactive to sounds, sights, movements, or touch; being slow to focus on or fail to complete activities of little interest; repeatedly becoming sidetracked from activities or frequently interrupting others; being easily frustrated and giving up on tasks, and requiring extra supervision to keep engaged in an activity. *Id*. § 416.926a(h)(3).

The ALJ concluded Claimant had less than a marked limitation in the domain of attending and completing tasks. (T. at 18.) In making his determination, the ALJ reasoned at the consultative examination, Claimant recalled and understood instructions. *Id*. at 234. She worked with reflection and deliberation and her attention and concentration were good. *Id*.

As an initial matter, any suggestion the ALJ wholly overlooked record evidence, including records from Dr. Byron, Dr. Loucks, and Ms. Griswold, is unconvincing where the ALJ specifically referenced the records at issue. (T. at 16-20, citing Exhibit 3F (Dr. Bryan), Exhibit 1F (Dr. Loucks), and Exhibit 2F (Ms. Griswold).[4]) In any event, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault*, 683 F.3d at 448 (quotation and citation omitted); *Karleigh J.T. v. Kijakazi*, No. 1:20-CV-1086 (GTS), 2022 WL 539436, at *9 (N.D.N.Y. Feb. 23, 2022) ("Importantly, while the Court notes that an

---

[4] In fact, the ALJ specifically cited to Dr. Byron's report where it was noted Claimant's cognitive skills were strong and her communication skills were solid. (T. at 20, citing Exhibit 3F at p.5 [T. at 211] and p.7 [T. at 213].)

ALJ must fully develop the record, there is no such requirement that the ALJ need discuss every piece of evidence that is contained within it.").[5]  Additionally, the ALJ's decision must be viewed as a whole.  *Jeanette J.*, 2020 WL 4932047, at \*5.

To be sure, as Plaintiff points out, there is evidence suggesting Claimant's resistance to changes in routine, emotional shifts, and inattention.  (Dkt. No. 16 at 16-15, citing T. at 206 (Dr. Loucks commenting "extreme emotional shifts, difficulty with transitions and resists change"), 202 (Ms. Griswold noting "struggles more with transitions and changes in what she feels are the rules or routines that should be followed"), 208 (Dr. Byron commenting "busy, frequently getting out of her seat during testing"), 227 (Ms. McFadden noting "Mom reports client had trouble with transitions 'at home' . . . and becomes hostile and upset when straying from schedule"), 186 (teachers indicating "a very serious" or "serious" problem in 9/13 subdomains including paying attention, focusing, carrying out instructions, completing work, working at reasonable pace, and working without distracting self or others).)

But the ALJ discussed evidence that reasonably conflicted with that evidence, including Dr. Shapiro's opinion Claimant had only mild limitations attending, understanding, and following simple instructions, and mild limitations completing age appropriate tasks.  *Id*. at 235. The ALJ discussed Dr. Shapiro's findings Claimant could recall and understand instructions, respond to changes commensurate with her age, did not evidence significant emotional distress

---

[5] The Court notes the foregoing providers did not render medical opinions as defined by the Regulations and, therefore, the ALJ was not required to specifically articulate how he considered it.  *See* 20 C.F.R. § 416.913(a)(2)(ii) (medical opinions must describe "impairment-related limitations and restrictions" in the six domains of functioning).  Moreover, as pointed out by the Commissioner, Plaintiff's suggestions that Dr. Byron "conducted the Child Behavior Checklist for Ages 1.5 to 5" is imprecise.  (Dkt. No. 17 at 11-12; Dkt. No. 16 at 14.)  The Child Behavior checklist is "completed by [the child's] parents," after which Dr. Bryan processed the resulting scores.  (Dkt. No. 17 at 12.)

during testing, and had good attention and concentration. *Id.* at 20, 234. In addition, the ALJ discussed evidence referencing Claimant's "solid and strong cognitive" skills and indications she could dress herself, draw, and play games, and was cooperative and attentive during examinations. (T. at 17, 18-19, 196, 198, 213, 220, 234.) As to the teachers' impression of Claimant in this domain, as discussed *supra*, the ALJ found it inconsistent with the foregoing evidence including the foregoing records indicating she had "solid and strong" communication skills and cognitive skills. *Id.* at 20.

Here, the ALJ expressly recognized there was opinion evidence reflecting Claimant's challenges in attending and completing tasks but ultimately determined that the evidence overall did not demonstrate a marked or extreme limitation in this domain. *Id.* at 20, 186. *See Jones*, 949 F.2d at 59; *see also Sally M. o/b/o C.B.*, 2021 WL 1783007, at *3. The ALJ's determination is consistent with Dr. Ferrin's prior administrative medical findings, which in turn cited Dr. Shapiro's consultative examination report and opinion. *Id.* at 18, 51, 234, 235-36.

Again, it is not for the Court to reweigh the evidence. *See Cruz o/b/o M.M.W.*, 2021 WL 4123969, at *13; *Veino*, 312 F.3d at 588. The ALJ appropriately evaluated opinion evidence and conflicting evidence concerning Claimant in this domain and he adequately explained how he resolved those conflicts. Substantial evidence supports the ALJ's decision. *Lewis*, 122 F. Supp. 3d at 7.

### c.      Domain of Interacting and Relating with Others

Plaintiff again contends the ALJ's analysis cites one evaluation at the exclusion of all the other record evidence, and does not provide any explanation as to why probative evidence was rejected. (Dkt. No. 16 at 17-20.) However, for the reasons outlined below, the ALJ's

determination of less than a marked limitation in the domain of interacting and relating with others was proper and supported by substantial evidence.

This domain considers how well the child initiates and sustains emotional connections with others, develops and uses the language of her community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). Preschoolers should be able to socialize with children and adults, prefer playmates of their own age and develop friendships, use words to express yourself, and show affection. *Id*. § 416.926a(i)(2)(iii). School age children should develop lasting friendships, work in groups, and understand another's point of view. *Id*. § 416.926a(i)(2)(iv). Examples of limited functioning in this domain includes difficulty playing games or sports with rules, difficultly communicating with others, and difficulty speaking intelligibly or with adequate fluency. *Id*. § 416.926a(i)(3).

The ALJ found Claimant has less than a marked limitation in interacting and relating with others. (T. at 18.) In making his determination, the ALJ reasoned at the consultative examination, Claimant was cooperative and made appropriate eye contact. *Id*. at 18, 234. She did not evidence significant emotional distress during the evaluation. *Id*. Additionally, she is interactive, and she has a normal affect for her age. *Id*. at 18, 253, 263.

Reviewing the ALJ's decision as a whole, *Jeanette J.*, 2020 WL 4932047, at *5, substantial evidence supports this determination, including Dr. Ferrin's prior administrative medical findings, which in turn cited Dr. Shapiro's consultive examination report and opinion. (T. at 19.) *Lewis*, 122 F. Supp. 3d at 7. To that end, Dr. Shapiro's report noted Claimant had appropriate eye contact, normal motor behavior, and cooperative demeanor. *Id*. at 234. She opined Claimant had no limitations interacting adequately with peers and adults. *Id*. at 236.

Additionally, throughout the decision, the ALJ discussed other evidence germane to this domain, which further supports a finding of less than a marked limitation. *Id*. at 19-20. For example, Claimant was described as having "solid social skills", it was reported she got along with her family and friends, and she had no negative behaviors at school. *Id*. at 19-20, 35, 152, 198, 203, 240, 276. Indeed, Plaintiff testified Claimant's teachers and principal describe her as "an angel" at school. *Id*. at 20, 35.

The Court disagrees with Plaintiff's assertion that the ALJ improperly overlooked or ignored favorable evidence relevant to this domain such that remand is warranted. (Dkt. No. 16 at 17-19.) As set forth above, the ALJ "need not mention, in the written decision, every shred of evidence, assessment, or diagnosis found in the record, and an 'ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.'" *Rashawn Y. v. Comm'r of Soc. Sec.*, No. 20-CV-01427, 2022 WL 4121382, at *5 (W.D.N.Y. Sept. 9, 2022) (quoting *Brault*, 683 F.3d at 448).

Again, Plaintiff identifies several notations in the record, which suggest and support Claimant has difficulty in this domain. (Dkt. No. 16 at 18-19, T. at 205 (Dr. Loucks noting Claimant "tends to be physically aggressive in play, and is easily frustrated causing tantrum"), 202 (Ms. Griswold commenting Claimant "struggles more with transitions and changes in what she feels are rules or routines to be followed"), 276 (Plaintiff reporting to Ms. McFadden needing help with Claimant for aggressive behavior, difficulty getting along with family members, difficult getting along with friends, and difficulty sustaining intimate relationships among other things), 268 (Ms. McFadden noting Claimant "would not make eye contact with writer"), 187 (teachers opining "a serious problem" in seeking attention appropriately and "an obvious problem" in playing cooperatively with other children, making and keeping friends,

expressing anger appropriately, following rules, introducing and maintaining relevant and appropriate topics of conversation, and in using adequate vocabulary and grammar to express thoughts/ideas in every day conversation).

At bottom, Plaintiff's challenge to the ALJ's determination with respect to this domain amounts to nothing more than disagreement with the ALJ's weighing of the evidence and does not warrant remand. *See Bertina K. o/b/o T.J.S.*, 2022 WL 3370808, *3 ("Under the substantial evidence standard of review, it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position[;] [s]ubstantial evidence 'means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting *Biestek*, 139 S. Ct. at 1154 (2019); *Adam T. v. Comm'r of Soc. Sec.*, No. 6:20-cv-00942 (TJM), 2021 WL 4519809, at * 4 (N.D.N.Y. Oc.t 4, 2021) ("Simply because the ALJ's resolution of conflicting evidence did not favor [p]laintiff is not reason for remand."); *Wilson o/b/o J.J.W. v. Comm'r of Soc. Sec.*, No. 1:19-cv-737, 2020 WL 3447800, *5 (W.D.N.Y. 2020) ("While [p]laintiff may disagree with the ALJ's conclusions in this domain, her mere disagreement with the ALJ's findings does not warrant remand").

In sum, review of the ALJ's decision demonstrates he appropriately evaluated conflicting evidence concerning Claimant in this domain and he adequately explained how he resolved those conflicts. Substantial evidence supports the ALJ's assessment of less than a marked limitation in interacting.

## IV. CONCLUSION

As discussed above, Plaintiff's disagreement with the ALJ's findings does not warrant remand. The Court must "defer to the Commissioner's resolution of conflicting evidence" and

reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25, 29 (2d Cir. 2018) (internal citations and quotations omitted). That is not the case here. The ALJ reasonably determined Claimant did not have two marked limitations or one extreme limitation in functioning. The Court accordingly finds no error in the ALJ's determination that Claimant is not disabled.

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) be **DENIED**; and it is further

**RECOMMENDED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) be **GRANTED**; and it is further

**RECOMMENDED** that the Commissioner's decision be **AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court serve copies of this Report-Recommendation on the parties in accordance with the Local Rules. Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: September 20, 2022
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

25